UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BRITTANY A. KIRKPATRICK, ET AL** | **CIVIL DOCKET NO. 6:20-CV-01612** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **SCHOOL BOARD OF LAFAYETTE PARISH, ET AL** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

### MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT ("the Motion") by defendants, Lafayette Parish School Board and Youngsville Middle School (collectively the "School Board"), requesting the dismissal of all claims against them. [Doc. 23]. Plaintiffs, Brittany Kirkpatrick and Quentin Greene ("the Plaintiffs"), oppose the Motion. [Doc. 27]. For the following reasons, the Motion is GRANTED and the claims against the School Board defendants are hereby DISMISSED WITH PREJUDICE. Further, because Title IX does not provide for individual liability, the Court likewise dismisses Plaintiffs' Title IX claims against the remaining defendant, Anna Ellington.

### FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of an incident that took place on Friday, December 13, 2019, between two minors who were then students at Youngsville Middle School in Lafayette Parish, Louisiana. The victim, K.G., alleges that a male student, G.E., inappropriately touched her on her thigh and groin area while the students were in class. [Doc. 25-3 at 1]. K.G. further alleges that after she removed his hand, G.E.

1

rubbed her back and stated to K.G., "You know you like that." *Id.* at 2. K.G. told her friends and family of the incident over the weekend and filed a formal complaint upon returning to school on Monday, December 16, 2019. [Doc. 25-1, p. 18-20]. The school promptly began an investigation after receiving the complaint. [Doc. 25-2, p. 21]. In his statement to school officials, G.E. admitted to touching K.G. [Doc. 25-3]. As part of the investigation, among other things, school administrators coordinated with the school resource officer, a law enforcement officer assigned to the school by the Youngsville Police Department. [Doc. 25-2, p. 16-18]; *see also* [Doc. 25-6] (discussing the police investigation).

After ascertaining the relevant facts and reviewing the situation, the School Board gave G.E. a one-day suspension, which was imposed on December 17, 2019, with G.E. returning to school on December 18, 2019. [Doc. 25-7]. G.E. was required to meet with school administrators regarding the incident and a "stay away" agreement was implemented that barred G.E. from interacting with K.G. [Docs. 25-8, 25-9]. Initially, however, K.G. and G.E. were still scheduled to remain in the same class, although they were to be separated. K.G. attended school on December 17, 2019 (the day G.E. was suspended) but missed the remainder of the final school week leading into Christmas break. [Doc. 25-1, p. 61-62]. When the students returned on January 6, 2020, K.G. requested that her schedule be changed so that she would no longer be in a class with G.E. [Doc. 25-2, p. 35-37]; [Doc. 25-1, p. 62]. The school was responsive to this request and changed her schedule as requested. *Id.* Thereafter, the only alleged interactions between G.E. and K.G. consisted of passing in the

2

hallway, where K.G. alleges that G.E. would look at her "with a smile on his face like it never happened." [Doc. 25-1, p. 28].

K.G.'s parents brought this suit alleging violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 et seq, against the School Board defendants as well as Anna Ellington, the parent of G.E. [Doc. 1]. The Plaintiffs allege federal question jurisdiction based on violations of Title IX. [Doc. 1]. On March 16, 2022, the School Board moved for summary judgment. [Doc. 23]. Plaintiffs filed an opposition on April 6, 2022, [Doc. 27] to which the School Board filed a reply on April 13, 2022 [Doc. 31]. The Motion is now ripe for ruling.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where one party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The key question in this analysis is whether the evidence on record "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of proving that there are no genuine issues of material fact to be resolved at trial. *Bustos v. Martini Club Inc.*, 599 F.3d 456, 468 (5th Cir. 2010). If the moving party meets this initial threshold, then "the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial." *Id.* During this analysis, courts must "view the facts in the light most favorable to…the nonmoving party." *City and Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 603 (2015). Further, "all justifiable inferences are to be

drawn" in favor of the nonmoving party. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## DISCUSSION

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). School districts which receive federal funding:

> may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit,' and (5) the district was deliberately indifferent to the harassment.

*Sanches v. Carrollton-Farmers Branch Ind. School Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citing *Davis ex re. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

For the purposes of this Motion, the only disputed issues are whether the harassment was severe and pervasive enough to establish a Title IX claim, and if so, whether the district was deliberately indifferent to the harassment. As set forth below, Plaintiffs' claims fail to meet either of the disputed elements.

### A. Alleged Harassment was Not "Severe and Pervasive" as Defined in Applicable Jurisprudence

To constitute a violation of Title IX, the behavior in question must be "so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Davis,* 526 U.S. at 652 (1999).

4

Generally, a single incident of harassment is insufficient to satisfy this requirement. *Id.* at 653. Rather, the behavior must "be serious enough to have the systemic effect of denying the victim equal access to an education program or activity." *Id.*

Here, aside from the single instance wherein G.E. touched the victim in an inappropriate manner, the only other allegation of harassment is that the perpetrator would look at the victim and "smile and laugh" when they passed in the hallways. [Doc. 27-2, ¶8]. There are no allegations that the perpetrator spoke with the victim again or violated the "stay away" order. The isolated instance of inappropriate touching followed by only very brief interactions in the hallway are insufficient to establish a violation of Title IX. Accordingly, there is no genuine dispute of material fact with regard to the severity or pervasiveness of the conduct to preclude entry of summary judgment.

### B.  The School Board was not Deliberately Indifferent to G.E.'s Alleged Harassment

The standard to show that a school acted with deliberate indifference "is a high one." *Doe ex rel Doe v. Dallas Ind. School Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (Doe II) (quotation omitted). "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators," who will be found deliberately indifferent only if the "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. To constitute deliberate indifference, the actions or decisions by the officials must be more than "merely inept, erroneous, ineffective or negligent." *Doe ex rel Doe v. Dallas Ind. School Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) (Doe I). Notably, even a school

5

board's failure to follow its own internal policies is alone insufficient to establish deliberate indifference. *Sanches*, 647 F.3d at 169 (5th Cir. 2011). Nor does Title IX require school districts to "take specific disciplinary actions, nor comply with parents' remedial demands." *I.F. v. Lewisville Ind. School District*, 915 F.3d 360, 369 (5th Cir. 2019). In essence, courts cannot find deliberate indifference so long as the school district responds "in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 649.

In arguing deliberate indifference, Plaintiffs contend that the School Board was deliberately indifferent because they failed to expel the perpetrator. [Doc. 27-2, ¶4]. Additionally, both parents argue that they were never given "proper direction on how to appeal" the School Board's disciplinary decisions. *Id*. at ¶9; [Doc. 27-3, ¶6]. Finally, Plaintiffs argue that the School Board failed to follow its own policies, which they argue required expulsion of the perpetrator. [Doc. 27-6, Ex. E] (recommending expulsion or change of placement for various infractions including sexual harassment which is defined as "intimidation, bullying, or coercion of a sexual nature).[1]

Even if Plaintiffs' factual contentions are correct, however, they still fall short of establishing a genuine dispute of material fact. Here, the School Board initiated an investigation immediately after receiving notice of the incident. [Doc. 25-2, Ex. C, p. 20-26]. That investigation involved reports from students, including an admission from the offending student that he had inappropriately touched the victim's thigh.

---

[1] It is unclear that the School Board, in fact, violated its policy. The record indicates that the subject chart reflects the most severe penalty (rather than the minimum penalty) that could be applied. [Doc. 25-2, Ex. C, p. 53].

[Doc. 25-3, Ex. D]. The school resource officer, a police officer with the Youngsville Police Department, was also brought into the investigation. [Doc. 25-2, Ex. C, p. 16-18, 25-26]; *see also* [Doc. 25-6, Ex. G] (documentation of the police investigation). In determining the appropriate penalty, the School Board considered a number of factors, including G.E.'s disciplinary history and its policy goal of deterring similar behavior. *Id.*, p. 44-45. The School Board ultimately concluded, based largely on the fact that G.E. had no previous history of disciplinary problems, to impose a one-day suspension. [Doc. 25-7, Ex. H] (showing one-day suspension); [Doc. 25-4, Ex. E] (showing lack of prior disciplinary history). The student and his parent were then required to attend a "return from suspension conference," and consent to a "stay away" agreement. [Doc. 25-8, Ex. I] (return from suspension conference form); [Doc. 25-9, Ex. J] (stay away agreement). This stay-away agreement barred the student from "approach[ing], talk[ing] to, sit[ting] by, or hav[ing] any contact" with the victim "at school or on school property, school buses, school bus stops, or at school related events." [Doc. 25-9, Ex. J]. Finally, after being informed that the victim was uncomfortable continuing to remain in class with the perpetrator, even when separated, the School Board altered their course schedules to ensure the students no longer shared a class. [Doc. 25-2, Ex. C, p. 35-37].

Given these facts, the Court finds that the Plaintiffs have not established a genuine dispute of material fact that the School Board acted with deliberate indifference to the alleged incident of sexual harassment. As noted previously, deliberate indifference is a high bar. The School Board was not required to satisfy Plaintiffs' remedial demands. Further, while the Plaintiffs allege that the School

7

Board violated their policies, the Court finds that this contention has little factual support and, in any event, is alone insufficient to establish deliberate indifference on the part of the School Board. Accordingly, the Court finds that the Plaintiffs have not created a genuine dispute of material fact as to whether the School Board acted in a manner that was clearly unreasonable.

C.   **Title IX Claim Against Individual Defendant**

The Court notes here that it appears from the Complaint that Plaintiffs have alleged a Title IX claim against Anna Ellington on behalf of her child G.E. Only recipients of federal funding are liable for violations of Title IX, and such liability "does not extend to school officials, teachers and other individuals." *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 n.12 (5th Cir. 2017) (citing *Davis*, 526 U.S. at 640-43). "District courts may, for appropriate reasons, dismiss cases *sua sponte*." *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021). Because there can be no individual liability under Title IX, the Court grants summary judgment on the Title IX claims asserted against defendant, Anna Ellington.

D.   **State Law Negligence Claims**

The School Board also seeks summary judgment on claims it believes have been asserted against it under Louisiana law. The Court's independent review of the Complaint does not find that Plaintiffs have asserted state law claims over which this Court exercises supplemental jurisdiction. [Doc. 1]; 28 U.S.C. § 1367. To the extent any such claims have been asserted, however, summary judgment is likewise appropriate. In Louisiana, school boards owe "a duty of reasonable supervision over students." *Wallmuth v. Rapides Parish School Bd.*, 813 So.2d 341, 346 (La. 2002).

However, "this duty does not make the school board the insurer of the safety of the children" nor does it require "[c]onstant supervision of all students." *Id.* (citations omitted). Rather, for a school board to be held liable, a plaintiff must show "proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident." *Id.* Further, "the risk of unreasonably injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised." *Id.* In the present matter, Plaintiffs have not asserted any facts showing that the School Board was negligent prior to the incident where G.E. touched K.G. As such, Plaintiffs are unable to establish a causal connection between any negligence of the School Board and the injury which occurred. Lastly, to the extent the Complaint purports to assert state law claims against individual defendant Anna Ellington, on behalf of her minor son, G.E., the Court declines to exercise supplemental jurisdiction over those claims given its lack of subject matter jurisdiction. *St Germain v. Howard*, 556 F.3d 261, 263-64 (5th Cir. 2009) (citing 28 U.S.C. §1367(c)) ("The district court has discretion to dismiss pendent state law claims and may decline to exercise supplemental jurisdiction over such claims where it has dismissed claims over which it had original jurisdiction").

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the MOTION FOR SUMMARY JUDGMENT [Doc. 23] is hereby GRANTED.

IT IS FURTHER ORDERED that all claims against the School Board defendants are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that because a Title IX claim cannot be brought against an individual defendant, all claims against Anna Ellington are likewise DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that to the extent the Complaint asserts state law claims against Anna Ellington, those claims are DISMISSED WITHOUT PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 11th day of July 2022.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE